# UNDER SEAL

## IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

JUL 2 5 2018

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:18-MJ-511 |
| | ) | |
| JUN HO CHOI | ) | **UNDER SEAL** |
| a/k/a "Ho Jun Choi," | ) | |
| | ) | |
| *Defendant.* | ) | |

## AFFIDAVIT IN SUPPORT OF A
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Raymond Abruzzese, being duly sworn, depose and state:

1.      I have been employed as a Special Agent of the U.S. Department of Homeland Security, Homeland Security Investigations (HSI) since in or around March 2003, and am currently assigned to Child Exploitation Unit in Dulles, Virginia.

2.      While employed by HSI, I have investigated federal criminal violations related to high technology or cybercrime, child exploitation, and child pornography, as well as commercial fraud and immigration fraud. I have gained experience through everyday work relating to conducting these types of investigations. I also have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography, as defined in 18 U.S.C. § 2256(8), including computer media. Due to my experience and training, I can identify child pornography when I see it. I have training and experience in the enforcement of the laws of the United States, including the preparation, presentation, and service of subpoenas, affidavits, criminal complaints, search warrants, and arrest warrants.

3. This Affidavit is made in support of a criminal complaint and arrest warrant charging **JUN HO CHOI**, a/k/a "Ho Jun Choi," with knowingly receiving child pornography in violation of Title 18, U.S. Code, Sections 2252(a)(2) and (b)(1).

4. I am familiar with the information contained in this Affidavit based upon the investigation I have conducted, along with my conversations with law enforcement officers and others and the review of reports, database records, and other materials. This Affidavit is submitted for the limited purpose of supporting a criminal complaint and securing an arrest warrant. It does not include each and every fact known to me or the government about the investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that **CHOI** knowingly received child pornography.

## STATUTORY AUTHORITY AND DEFINITIONS

5. I know from my conversations with federal prosecutors that Title 18, U.S. Code, Sections 2252(a)(2) and (b)(1) prohibit the knowing receipt or distribution of any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, if the producing of the visual depiction involves the use of a minor engaging in sexually explicit conduct and the visual depiction is of that conduct. For purposes of this affidavit, visual depiction of minors engaging in sexually explicit conduct, will be referred to herein as "child pornography."

6. I also know from my conversations with federal prosecutors that the following terms have the following definitions:

    a. The term "minor," as defined in 18 U.S.C. § 2256(1), means any person

2

under the age of 18 years.

      b.     The term "sexually explicit conduct," as defined in 18 U.S.C.

§ 2256(2)(A)(i)–(v), means actual or simulated (a) sexual intercourse, including genital-genital,

oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b)

bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the

genitals or pubic area of any person.

      c.     The term "visual depiction," as defined in 18 U.S.C. § 2256(5), includes

undeveloped film and videotape, data stored on computer disc or other electronic means which is

capable of conversion into a visual image, and data that is capable of conversion into a visual

image that has been transmitted by any means, whether or not stored in a permanent format.

## BACKGROUND ON THE INVESTIGATION

7.     Canadian law enforcement officers have reported to HSI that on or about March

22, 2016, an officer with the Saskatchewan Police Service (SPS) in Saskatchewan, Canada,

arrested an individual (hereinafter, "John Doe") for parole violations.[1]  Pursuant to the arrest,

SPS seized John Doe's Apple iPhone.  John Doe told SPS that he had been using an online

mobile chat application to download and distribute child pornography images and videos to a

network of other users of the mobile chat application.  John Doe provided SPS his username and

login information for the application and gave SPS consent to take over and use his account to

conduct investigations and gather evidence.  This chat application is hereinafter referred to as

---

[1] John Doe's true name is known to law enforcement.  This investigation remains active and disclosure of Doe's true name would potentially alert investigative suspects to the fact that law enforcement action is being taken, thereby provoking suspects to notify other users of law enforcement action, flee, and/or destroy evidence.

"Application A."[2]  Neither HSI nor your Affiant was involved with the arrest of John Doe.

8.    Application A is designed for mobile chatting or messaging.  To use this application, a user downloads the application to a mobile phone or other mobile device via a service such as Google Play Store, Apple iTunes, or another similar provider.  Once downloaded and installed, the user is prompted to create an account and username.  The user also has a display name, which is what other users see when transmitting messages back and forth.  Once the user has created an account, the user is able to locate other users via a search feature, and the two parties can then send each other messages, images, and videos.

9.    Application A users also are able to create chat groups, of up to 50 people, to communicate in a group setting and exchange images and videos.  These groups are administered by the group creator who has the authority to remove and ban other users from the created group.  Once the group is created, Application A users have the option of sharing a link to the group that includes all of their contacts or any other user.  These groups are frequently created with a "hashtag" that is easily identifiable or searchable by keyword.

10.    SPS was able to log in and secure John Doe's Application A account.  In reviewing the chat conversations held with John Doe's account, SPS was able to identify approximately 72 unique Application A users who had shared at least one image or video of child pornography with John Doe directly, or who had posted child pornography in one of the Application A groups to which John Doe belonged, and six Application A users who had posted a

---

[2] The actual name of "Application A" is known to law enforcement.  This chat application remains active and disclosure of the name of the application would potentially alert its users to the fact that law enforcement action is being taken against users of the application, thereby provoking users to notify other users of law enforcement action, flee, and/or destroy evidence.  Accordingly, to protect the confidentiality and integrity of the ongoing investigation involved in this matter, specific names and other identifying factors have been replaced with generic terms and the application will be identified herein as "Application A."

4

message or commented on child pornography images or videos. According to SPS, many of the groups to which John Doe belonged had names that included terms that your affiant knows through training and experience are suggestive of child pornography.

11. SPS logged all of the information regarding the messages and saved all of the images and videos of child pornography shared with John Doe's account. SPS sent preservation requests to Application A regarding approximately all 78 accounts referenced in the previous paragraph between on or about April 20 and 30, 2016. SPS transmitted to HSI the information logged and saved from the review of John Doe's Application A account.

12. On or about June 28, 2016, a Production Order was issued by a Provincial Court Judge in Saskatchewan, Canada, ordering Application A to produce user information and saved content regarding these approximately 78 accounts. On or about September 15, 2016, SPS received the requested results from Application A. The information received from Application A, including the Certification of Records provided by Application A, was transmitted to HSI, along with a copy of the Production Order issued by the Provincial Court Judge.

13. The results provided by Application A included, among other things, additional images and videos of child pornography recently shared by the approximately 78 accounts. This included both child pornography shared with John Doe and child pornography shared with other individuals and groups not related to John Doe's account. Additional Production Orders were served on Application A for information regarding the Application A accounts who shared child pornography with the originally investigated the approximately 78 accounts, leading to the identification of additional Application A accounts beyond the approximately 78 accounts that shared child pornography with John Doe.

5

## IMAGES DISTRIBUTED BY APPLICATION A USER "ALITTLEPUSHH"

16.     Your affiant has reviewed the information received from Application A. A review of that information shows that between on or about March 3 and 12, 2016, an Application A user with the account name "ALITTLEPUSHH" used Application A to share approximately 33 images and/or videos of child pornography. Some examples of the images and videos shared by ALITTLEPUSHH include the following:

        a.      On or about March 3, 2016, at approximately 03:26:24 UTC, ALITTLEPUSHH shared a video file with "IMANICEONE," another Application A user, which is a little more than one minute in length and appears to depict a female, who is approximately five to seven years old, performing oral sex on an adult male penis.

        b.      On or about March 3, 2016, at approximately 03:41:16 UTC, ALITTLEPUSHH shared a video file with IMANICEONE that is under one minute in length and appears to depict a female, who appears to be five to seven years old, performing oral sex on an adult male penis.

        c.      On or about March 6, 2016, at approximately 18:41:58 UTC, ALITTLEPUSHH shared an image file with IMANICEONE that appears to depict a prepubescent female kneeling on a blanket with a fully exposed vagina, which appears to be the focal point of the image.

        d.      On or about March 12, 2016, at approximately 19:55:02 UTC, ALITTLEPUSHH shared an image file with IMANICEONE that appears to depict a prepubescent female, who appears to be four to five years old, lying on a bed naked from the waist down with her hands in the area of her vagina and appearing to be widening her vaginal area.

6

e.     On or about March 12, 2016, at approximately 19:55:19 UTC, ALITTLEPUSHH shared a video file with IMANICEONE that is approximately 1:40 minutes in length and appears to depict a female, who appears to be 12 to 15 years old, standing in what appears to be a garage and being touched in the breast and vaginal areas by a third party's arm, having her shirt removed by the third party, and being instructed to remove her shorts, expose her vagina, and masturbate with her hand.

17.     The information provided by Application A included IP addresses used by the ALITTLEPUSHH. Specifically, IP address 98.163.108.2 was used by ALITTLEPUSHH on all of the dates provided in Paragraph 16, when ALITTLEPUSHH transferred files to IMANICEONE via Application A. In addition, information provided by Application A indicates that IP address 98.163.108.2 was used by ALITTLEPUSHH to log into Application A on or about March 3, 6, and 12, 2016. A query of the American Registry for Internet Numbers online database revealed that IP address 98.163.108.2 was registered to Cox Communication, Inc.

18.     On or about July 25, 2017, records were received from Cox Communications, Inc. relating to IP address 98.163.108.2. A review of those records indicates that on the dates and times identified above in Paragraph 16, IP address 98.163.108.2 was assigned to "Dong Soo Choi" at a residence in Lorton, Virginia, which is within the Eastern District of Virginia (hereinafter, the "Lorton Residence").

19.     Your affiant's investigation has revealed that Dong Soo Choi is **CHOI**'s father and that they both live at the Lorton Residence.

### SEARCH WARRANT EXECUTION AT CHOI'S RESIDENCE

20.     On or about November 30, 2017, a federal search and seizure warrant issued by the Eastern District of Virginia was executed at the Lorton Residence. The warrant authorized

7

the search and seizure of evidence of violations of Title 18, U.S. Code, Sections 2252(a)(2) and (a)(4)(B), which make it a crime to distribute, receive, possess, and access with intent to view child pornography.

21.    During the execution of the search warrant, electronic devices were located and seized from the residence, including a Western Digital (WD) external hard drive (S/N: WX21A66L7KKN), an HP Pavilion laptop computer (S/N: CNF8140SIN) and a Samsung Galaxy S2 (Model SGH-1777). The WD external hard drive and the HP Pavilion laptop computer were both found by law enforcement officers in a bedroom that contained **CHOI**'s personal effects.

22.    It appears that both the WD external hard drive and the HP Pavilion laptop computer have traveled in interstate or foreign commerce. This is because the manufacturer's label affixed to the WD external hard drive indicates that the device was manufactured in Taiwan, and the manufacturer's label affixed to the HP Pavilion laptop indicates the device was manufactured in China.

**COMPUTER FORENSIC ANALYSIS OF THE HP PAVILION LAPTOP**

23.    A computer forensic analysis was performed on the HP Pavilion laptop. This review revealed that thousands of images of child pornography were within a user account on the device called "HP." Specifically, more than 900 images and 2,000 videos were found within the HP account that appear to constitute child pornography, as defined by 18 U.S.C. § 2256(8). Markedly, "Users\HP\Desktop\Downloads\oh ny" was the file path in which several of the images and videos of child pornography were found, such as files with titles indicative of child pornography like "8yo Carnie3 hard fuck.wmv," as well as the following:

8

a.  A video file entitled "Ana Laura (@AnaLaur70223024) – Twitter_3.TS" was found within the "oh ny" subfolder. This file, which has a creation date of on or about December 28, 2016, and a MD5 hash value of 4F199815C82A74628C28C0EB4DADAEA8, depicts an adult male having vaginal intercourse with a prepubescent female, who is naked except for a small white shirt that is pushed up over her chest. Visible within the video is text scrolling across the top that reads, "This video was uploaded to www.xvideos.com." Based on this scrolling text and the location of the video within a subfolder entitled "Downloads," I submit that it is reasonable to believe that the video was downloaded from the Internet.

b.  A video file entitled "SnOwl vichatter %U00D0%U0090%U00D0½%U00D0%U00B3%U00D0µ%U00D0»%U00D0%U00B8%U00D 0½%U00D0° %U00D0%U00A8%U00D0°Ñ%U0082%U00D0%U00BE%U00D0½ girl 12yo pussy 2011 pthc webcam_HDTV(1).avi" also was found within the "oh ny" subfolder. This video, which has a creation date of on or about February 9, 2017, and an MD5 hash value of 3397E3A26B0BC8E499DD64222E854480, depicts a prepubescent female removing her clothing and using her fingers to masturbate and penetrate her vagina. Visible within the video is the following watermark: "http//vichatter.com." Based on this watermark and the location of the video within a subfolder entitled "Downloads," I submit that it is reasonable to believe that the video was downloaded from the Internet.

c.  Another example of child pornography in the "oh ny" subfolder is a video file entitled "VID_20150519_132813.mp4." That video, which has a creation date of on or about February 9, 2017, and an MD5 hash value of 38362D865FBF0F8B22BDB2286D9127CC, depicts a prepubescent female performing oral sex on the erect penis of an adult male. At the beginning of the video the following text appears on screen: "Vicky's 1st Taste of Cum." I know

from my training and experience that the term "Vicky" often is used as a search term by individuals that are seeking child sexual abuse material, and that the name "Vicky" is associated with a series of images and videos that depict an identified female child victim. I further know through my training and experience that the so-called "Vicky series" of child pornography images is available on the Internet and often is traded between individuals online.

24.     The forensic review of the HP Pavilion laptop also identified a number of LNK files, which I know are generated when a user opens a local or remote file or document. One such LNK file concerned the video file entitled "Ana Laura (@AnaLaur70223024) - Twitter_3.TS." According to that forensic artifact, the aforementioned video had been opened on or about December 28, 2016, from the file path "C:\Users\HP\Desktop\Downloads\oh ny\ycvc." It appears that the "ycvc" sub-folder is no longer in the HP Pavilion laptop's allocated space.

25.     The forensic analysis of the HP Pavilion Laptop also revealed a resume for **CHOI**, as well as homework assignments associated with "Hojun Choi" during the time period of June 5, 2013, through August 29, 2016. Moreover, one file was entitled "APUSH End of the year Project.docx," which is notable because, as noted above, the Application A user distributing images of child pornography via the IP address associated with the Lorton Residence was "ALITTLEPUSHH."

### COMPUTER FORENSIC ANALYSIS OF THE WD EXTERNAL DRIVE

26.     A computer forensic analysis also was performed on the WD external hard drive. This review revealed that the device contained over 350 images and 1,000 videos that appear to constitute child pornography, as defined by 18 U.S.C. § 2256(8).

27.     Similar to the HP Pavilion laptop, several of the images and videos of child

pornography were found within a user-created file folder entitled "oh ny," which was within the "User Manuals\RON\oh ny" file path.

28.     Markedly, it was determined that three of the video files found within the "oh ny" sub-folder had titles and MD5 hash values that corresponded to the three video files described above in Paragraph 22(a), 22(b), and 22(c). I know from my training and experience that matching titles and MD5 hash values make it highly likely that the video files are the same, and it appears from my review of the content of these files that they are, in fact, the same. The forensic analysis further indicates that all three of these video files were placed onto the WD external hard drive on or about February 10, 2017.

29.     The forensic analysis of the HP Pavilion laptop also revealed that March 21, 2017, was the first time after the last reboot that the WD external hard drive was connected to the HP Pavilion laptop. I know from my experience and discussions with forensic examiners that this forensic artifact does not mean that March 21, 2017, was the first time the WD external hard drive was ever connected to the HP Pavilion laptop, and, indeed, a comparison of the creation dates of the files described in Paragraph 22(a), 22(b), and 22(c) to the creation dates of the files described above in Paragraph 28 suggests that the WD external hard drive was connected to the HP Pavilion laptop on or before February 10, 2017.

### COMPUTER FORENSIC ANALYSIS OF THE SAMSUNG S2

30.     The Samsung S2 smartphone seized from the Lorton residence also was forensically reviewed. This analysis revealed that Application A had been installed on this device on or about May 15, 2013. Further the forensic review revealed the existence of five image files and two video files depicting child pornography, as defined in 18 U.S.C. § 2256(8).

## CONCLUSION

31. For the foregoing reasons, I submit to the Court that probable cause exists to believe that **JUN HO CHOI**, a/k/a "Ho Jun Choi," has knowingly received child pornography in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). I, therefore, respectfully request that the Court issue a criminal complaint and arrest warrant authorizing the arrest of **CHOI**.

Respectfully submitted,

Special Agent Raymond Abruzzese
Homeland Security Investigations

Subscribed to and sworn to before me
on this 25th day of October, 2018.

_____ /s/ _____

John F. Anderson

~~United States Magistrate Judge~~

The Honorable John F. Anderson
United States Magistrate Judge